1414

Furman T. WALLACE, M.D., Appellant v. OWENS-ILLINOIS, INC., Atlantic Soft Drink Company, Inc., and Community Cash Stores, Respondents.

(389 S. E. (2d) 155)

Court of Appeals

*Jefferson V. Smith, Jr.,* and *David M. Rogers* both of *Carter, Smith, Merriam, Rogers & Traxler,* Greer, *for appellant.*

*S. Keith Hutto* and *Elbert S. Dorn* both of *Turner, Padget, Graham & Laney, Edward W. Mullins, Jr.* and *John E. Schmidt, III* both of *Nelson, Mullins, Riley & Scarborough,* Columbia, and *William U. Gunn* of *Holcombe, Bomar, Wynn & Gunn,* Spartanburg, *for respondents.*

Heard Oct. 18, 1989.

Decided Nov. 13, 1989.

BELL, Judge:

This is a product liability action in which Furman Wallace seeks recovery for personal injuries on theories of negli-

gence, strict tort, and breach of an implied warranty of merchantability. The case involves an exploding soft drink bottle. Wallace sued the manufacturer of the bottle, Owens-Illinois, Inc., the soft drink distributor, Atlantic Soft Drink Co., Inc., and the retailer, Community Cash Stores. The Defendants moved for summary judgment on the grounds of (1) no proximate causation, (2) contributory negligence, and (3) assumption of the risk. The circuit court granted summary judgment on all three grounds. Wallace appeals. We reverse and remand for trial.

For purposes of this appeal, certain material facts are not disputed. Wallace was in his home kitchen opening a glass soft drink bottle when it exploded because of a defect in its manufacture. Fragments of glass and the liquid contents fell to the floor. However, the explosion caused no injury to Wallace. He left the kitchen unharmed, returning with his wife about five minutes later to clean up the floor. He first picked up the larger fragments of glass by hand and then began placing paper towels on the floor to absorb the liquid. In the course of cleaning up, he got liquid on the smooth leather soles of his bedroom slippers, which caused him to slip, fall and sustain bodily injuries.

Wallace testified that he used his best efforts to avoid stepping in the liquid on the floor while cleaning it up. The Defendants claim the evidence showed, on the contrary, that Wallace unnecessarily walked back and forth through the puddles of liquid during the cleanup.

## I.

In a product liability action, regardless of the theory on which the plaintiff seeks recovery, he must establish that the defective product proximately caused his injury. *Young v. Tide Craft, Inc.,* 270 S. C. 453, 242 S. E. (2d) 671 (1978); *Madden v. Cox,* 284 S. C. 574, 328 S. E. (2d) 108 (Ct. App. 1985), *appeal dismissed,* 286 S. C. 127, 332 S. E. (2d) 102 (1985). Proximate cause does not mean the sole cause; the defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury. *Cope v. Eckert,* 284 S. C. 516, 327 S. E. (2d) 367 (Ct. App. 1985). For an act to be a proximate cause of the injury, the injury must be a foreseeable consequence of the act. *Young v. Tide Craft,*

*Inc., supra.* The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of act. *Id.* The actor cannot be charged with that which is unpredictable or could not be expected to happen. *Id.*

In this case, the test of foreseeability is clearly met. It was to be expected that if the defective bottle exploded, broken glass and liquid would spill on the floor. It was also predictable that a spill of broken glass and liquid would create a hazard which might cause injury to someone. That a person might slip on the liquid or be cut by the broken glass was readily foreseeable. Any resulting injury would be the natural and probable consequence of furnishing a defectively manufactured bottle containing liquid under pressure.

The circuit court held Wallace's injury was not foreseeable, because he was not hurt by the explosion itself. In doing so, the court applied the wrong legal test. It is certainly surprising that Wallace was not injured by the explosion. However, it is not an expected harm which fails to occur, but the foreseeable harm which does occur that is the touchstone of proximate cause.

The Defendants argue that even if an injury by slip and fall was foreseeable, Wallace's conduct in this case constituted an intervening act which broke the chain of proximate causation.

An act of the plaintiff that intervenes between the wrongful act of the defendant and the injury complained of does not necessarily break the chain of proximate causation. On the contrary, the general rule is that one who does a wrongful act is answerable for all consequences that may ensue in the normal course of events. Any number of causes and effects may intervene between the original wrongful act and the final injurious consequence. If the intervening acts are (1) set in motion by the original wrongful act and (2) are the normal and foreseeable result of the original act, the final result, as well as every intermediate cause, is considered in law to be the proximate result of the first wrongful cause. The law focuses on the probable injurious consequences which were to be anticipated, not the number of subsequent acts which might inter-

vene. *Pfaehler v. Ten Cent Taxi Co.*, 198 S. C. 476, 18 S. E. (2d) 331 (1942).

In other words, an intervening act does not break the chain of causation if it is a normal response to the situation created by the original wrongful act. *Hilburn v. Shirley*, 437 So. (2d) 1252 (Ala. 1983); *see also Young v. Tide Craft, Inc., supra* (if the intervening acts are a probable consequence of the primary wrongdoer's actions, the primary wrongdoer is liable). Likewise, if the original wrongful act creates a condition of peril, the normal efforts of a person to avert the threatened harm are not a superseding cause of injury resulting from such efforts. *Herberg v. Swartz*, 89 Wash. (2d) 916, 578 P. (2d) 17 (1978).

In this case, the exploding bottle created a hazardous condition on the kitchen floor. Wallace's attempt to clean up the spill was surely a normal and foreseeable response to the situation. Therefore, his intervening act did not break the chain of proximate causation.

We reject the argument that Wallace's actions became the supervening cause of his injuries because he undertook the cleanup in a careless manner. It is not the quality of his actions, but their foreseeability, that determines proximate causation. *See Matthews v. Porter*, 239 S. C. 620, 124 S. E. (2d) 321 (1962) (intervening negligence will not excuse first wrongdoer if intervention was foreseeable; test is probable consequences reasonably to be anticipated, not character of subsequent event).[1]

Because the elements of proximate causation were clearly established by the facts presented, we reverse the granting of summary judgment to the Defendants on this ground.

## II.

Contributory negligence is a lack of ordinary care on the part of a person injured by the negligence of another which combines and concurs with that other's negligence and contributes to the injury as a proximate cause without which the injury would not have occurred. The doctrine of contrib-

---

[1] A careless intervening act may be contributory fault which prevents the intervening actor from recovering for his injuries. The plaintiff's failure to exercise due care goes to the question of contributory negligence, not the question of proximate causation.

utory negligence embodies the principle that an injured person should not be permitted to ask from others greater care than he himself exercises for his own welfare. If in the exercise of ordinary care, the plaintiff might have avoided the consequences of the defendant's negligence, he is the author of his own injury in the eyes of the law. *South Carolina Insurance Company v. James C. Greene & Company*, 290 S. C. 171, 348 S. E. (2d) 617 (Ct. App. 1986).

■ In South Carolina, contributory negligence is an affirmative defense to an action for negligence. It has no application to an action based on breach of warranty or liability for a defective product. *See Imperial Die Casting Co. v. Covil Insulation Co.*, 264 S. C. 604, 216 S. E. (2d) 532 (1975) (warranty); Section 15-73-30, Code of Laws of South Carolina, 1976, and Restatement (Second) Torts, Section 402A, comment n. (product liability).

The question of contributory negligence is ordinarily a question of fact for the jury and only rarely becomes a question of law for the court. *Tucker v. Albert Rice Furniture Sales, Inc.*, 295 S. C. 119, 367 S. E. (2d) 427 (Ct. App. 1988). In determining whether a plaintiff is contributorily negligent as a matter of law, the evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Griffin v. Shively*, 227 Va. 317, 315 S. E. (2d) 210 (1984); *Collins & Sons Fine Jewelry, Inc., v. Southeastern Security Systems, Inc.*, 296 S. C. 219, 371 S. E. (2d) 539 (Ct. App. 1988). If the evidence is conflicting or susceptible to different reasonable inferences, the issue is for the jury to determine. *Tucker v. Albert Rice Furniture Sales, Inc., supra.*

In this case, the judge erred in granting summary judgment on the breach of warranty and strict liability causes of action. The defense of contributory negligence does not apply to those claims.

■ As to the negligence cause of action, there was a clear conflict of evidence regarding the degree of care Wallace exercised in cleaning up the spill. Wallace claimed he did his best to avoid the liquid on the floor, the Defendants claimed he paid no attention to where he stepped, walking back and forth through the spill several times. In view of this conflict, what Wallace did and whether

it was reasonable in the circumstances was for the jury to decide. The circuit court erred in granting summary judgment. We reverse and remand for trial by the jury.

At trial, the judge should instruct the jury that it may reach the question of contributory negligence only if it first determines that the Defendants were *negligent* in furnishing the defective soft drink bottle. If the jury finds for Wallace on the other causes of action, but not on negligence, then it should not consider the defense of contributory negligence.

### III.

Like the defense of contributory negligence, the affirmative defense of assumption of risk ordinarily presents a question of fact for the jury. *Broom v. Southeastern Highway Contracting Company, Inc.,* 291 S. C. 93, 352 S. E. (2d) 302 (Ct. App. 1986). Unlike contributory negligence, which is based on carelessness and inadvertence, assumption of risk requires deliberate and voluntary choice to assume a known risk. *Id.; see also Litchfield Company of South Carolina, Inc. v. Sur-Tech, Inc.,* 289 S. C. 247, 345 S. E. (2d) 765 (Ct. App. 1986) (distinction between two defenses is that contributory negligence is a matter of departure from standard of conduct of reasonable person, while assumption of risk is a matter of knowledge of a danger and voluntary acquiescence in it). The doctrine of assumption of risk embodies the principle that one should not be permitted knowingly and voluntarily to incur an obvious risk of harm, when he has the ability to avoid doing so, and then hold another person responsible for his injury. *Griffin v. Griffin,* 282 S. C. 288, 318 S. E. (2d) 24 (Ct. App. 1984). The court may declare that the plaintiff assumed the risk as a matter of law only if the sole reasonable inference to be drawn from the evidence is that the plaintiff freely and voluntarily exposed himself to a known danger which he understood and appreciated. *Broom v. Southeastern Highway Contracting Company, Inc., supra.*

In this case, Wallace admittedly knew of and appreciated the danger created by the presence of broken glass and liquid on his kitchen floor. The critical question is whether he *voluntarily* exposed himself to the danger by undertaking to clean up the spill.

The plaintiff's acceptance of a risk is not voluntary if the

defendant's wrongful conduct leaves him no reasonable alternative course of conduct in order to avert harm to himself or another. *VanCollom v. Johnson*, 228 Va. 103, 319 S. E. (2d) 745 (1984). Viewing the evidence in the light most favorable to Wallace, the explosion of the defective bottle left him with no reasonable alternative. He had a choice between two evils: he could leave the spill on the floor with the risk that he or others might be injured by its presence or he could undertake to remove the spill with the risk that he or another would be injured in the process of cleaning up. In other words, either choice entailed risk. In these circumstances, his choice to remove the hazard was not a voluntary assumption of risk. The Defendants had created a condition of peril which involved a risk of harm no matter which choice Wallace made. Risk was unavoidable in the circumstances.[2]

Since Wallace's attempt to remove the peril cannot be said to have been voluntary as a matter of law, the circuit court judge erred in granting summary judgment on this ground. We reverse and remand for trial.

Reversed and remanded.

SHAW and CURETON, JJ., concur.

---

[2] The Defendants suggest Wallace could have left the spill for the maid to clean up the following morning; but this alternative would not avoid the risk either. Indeed, leaving the spill overnight might have increased the risk. A person using the kitchen might be injured in the meantime; and the maid, like Wallace, would also incur a risk by undertaking to remove the spill. There was evidence that Mrs. Wallace needed to use the kitchen during the night to take prescription medicines stored in the refrigerator. Moreover, after the spill had been left to become sticky, it might have been more difficult to remove with safety.