42 F.3d 1385
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dorothy L. BOYD, Administrator of the Estate of Orlando
Anthony Boyd, Deceased, Plaintiff-Appellant,
LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,
v.
SPEIZMAN INDUSTRIES, INCORPORATED, Defendant-Appellee.
Dorothy L. BOYD, Administrator of the Estate of Orlando
Anthony Boyd, Deceased, Plaintiff-Appellant,
LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,
v.
SPEIZMAN INDUSTRIES, INCORPORATED, Defendant-Appellee.
 Nos. 94-1221, 94-1382.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1994.
Decided Dec. 12, 1994.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, District Judge.
 Thomas Preston Lloyd, Roanoke, VA, for appellant.
 Melissa Walker Robinson, GENTRY, LOCKE, RAKES & MOORE, Roanoke, VA, for appellee.
 Raymond Scott Butler, Bertram M. Goldstein, GOLDSTEIN, HOOD & ASSOCIATES, Baltimore, MD, for appellant.
 J. Rudy Austin, Thomas H. Miller, GENTRY, LOCKE, RAKES & MOORE, Roanoke, VA, for appellee.
 W.D.Va.
 AFFIRMED.
 Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Dorothy L. Boyd, as administrator of her son's estate,[1] appeals from a grant of summary judgment to Speizman Industries, Incorporated (Speizman) on her wrongful death claim. We hold that Decedent was contributorily negligent as a matter of law and accordingly affirm the decision of the district court.
 
 
 2
 I. The material facts are essentially undisputed. Decedent
 
 
 3
 was electrocuted while attempting to repair a UNIRAV 1200-HD
 
 
 4
 knitting machine manufactured by Speizman. Speizman sold
 
 
 5
 the machine to Decedent's employer, Fred Whitaker Company
 
 
 6
 (Whitaker) in 1967.[2] Whitaker installed the
 
 
 7
 machine and designated it "Unit 17."
 
 
 8
 Six weeks before his death, Decedent was promoted to a position in which he received on-the-job training to become a machine repairman in Whitaker's knitting department. This training consisted of shadowing and observing a repairman during the work day, assisting when requested. During the six weeks of his training, Decedent was instructed only about repairs to the knitting heads on the machines; he was not taught how to repair the motors or the electrical systems. And, on several occasions Decedent was told by his superiors not to attempt repairs to the motors or electrical systems.
 
 
 9
 On the day of the accident, the repairman Decedent was assisting noticed that the drive belt had slipped off of one of Unit 17's three motors. Before this could be corrected, the repairman was called away to perform maintenance work on other machines. Prior to leaving Decedent, the repairman instructed him not to attempt to replace the belt.
 
 
 10
 Kathleen Miller, an employee of the knitting department, saw Decedent walking through the department, checking the machines as he went. She left her post briefly and on her return discovered Decedent underneath Unit 17. His hands were on either side of an electrical line that supplied power to the broken motor, and Miller could hear electrical arcing. A subsequent investigation revealed that the plug on the electrical line was ungrounded. Whitaker's director of engineering concluded that when Decedent attempted to disconnect the plug, it had shorted against its metal casing and electrocuted him.
 
 
 11
 Boyd filed this action against Speizman, claiming negligent design and failure to warn, breach of express warranty, and breach of implied warranties of merchantability and fitness for a particular purpose. After discovery, Speizman moved for summary judgment, arguing that Boyd could not present a genuine issue of material fact with respect to any of her claims and that Decedent was contributorily negligent or had assumed the risk as a matter of law. The district court granted summary judgment to Speizman on all counts, and Boyd now appeals the decision of the district court with respect to her negligence claims.
 
 II.
 
 12
 We agree with the district court that Decedent was contributorily negligent as a matter of law. Under Virginia law, contributory negligence exists when "a plaintiff fail[s] to act as a reasonable person would have acted for his own safety under the circumstances." Artrip v. E.E. Berry Equip. Co., 397 S.E.2d 821, 824 (Va.1990). Contributory negligence is ordinarily a jury question, but may be found as a matter of law when reasonable minds could not differ as to the outcome. Griffin v. Shively, 315 S.E.2d 210, 212 (Va.1984). Contributory negligence is a complete bar to recovery on a simple negligence claim in Virginia. See id. at 212-13. The evidence is undisputed that Decedent disregarded the instructions of his superiors not to attempt to replace the drive belt on Unit 17 and not to attempt to repair the motors or electrical systems of the machines in general.[3] Therefore, the district court correctly concluded that Decedent's conduct constituted contributory negligence as a matter of law.
 
 III.
 
 13
 Because Decedent was contributorily negligent as a matter of law, Boyd's negligence claims are barred. The district court therefore properly granted summary judgment to Speizman.
 
 AFFIRMED
 
 
 [1]
 For ease of reference, we refer to Dorothy Boyd as "Boyd" and to her son, Orlando Anthony Boyd, as "Decedent."
 
 
 [2]
 Whitaker is a commercial dyer of carpet yarns. The machines are used to knit yarn into skeins for dyeing
 
 
 [3]
 Although we note also that it is standard procedure in Whitaker's knitting department to cut off power to a machine at a main breaker switch before attempting to make repairs, we do not base our decision on this ground